UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| FARDIN AZAR <br><br> PLAINTIFF, <br><br> V. <br><br> RAYTHEON TECHNOLOGIES <br><br> DEFENDANT. | ) <br> ) <br> ) <br> ) <br> ) <br> )     Civil Action No. <br> )     1:25-CV-11618-DJC <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## SECOND AMENDED COMPLAINT AND JURY DEMAND

## NATURE OF THE ACTION

This action arises from a textbook case of employment discrimination under the Americans with Disabilities Act of 1990. Plaintiff Fardin Azar ("Mr. Azar" or "Plaintiff") brings this action seeking redress for his wrongful termination by Defendant RTX Corporation ("Raytheon" or "Defendant"). After Mr. Azar became disabled from a severe car accident which occurred on company time, Defendant ignored Mr. Azar's repeated requests for reasonable accommodations, and then unceremoniously fired him on the basis of his disability.

Prior to his termination, Mr. Azar, a United States Veteran, had been an employee of Raytheon for 24 years and was highly regarded by both colleagues and supervisors. Mr. Azar is both technically skilled and deeply passionate about his work, gifts he contributed to Raytheon for over two decades. He has advanced degrees in mechanical engineering from Northeastern University and the University of Massachusetts Lowell. Mr. Azar received consistent feedback that praised his dedication and work product.

1

After the accident, Mr. Azar had hoped that the Defendant, to whom he had given his unwavering support for years, would do the right thing. Instead, because of his disability, he became dispensable to the Defendant, who set out to get rid of him. Following his return to work from an approved medical leave of absence, Mr. Azar made multiple reasonable requests through the appropriate channels for disability accommodation. Instead of meeting their loyal employee with understanding and respect, Raytheon supervisors overran his work schedule while other employees mocked and gossiped about him. Mr. Azar actively sought out vacant positions within Raytheon that would better accommodate his disability as his pleas were continually disregarded. In every instance where Raytheon supervisors could have accommodated Mr. Azar's reasonable requests, they chose to hinder him and push him out. Mr. Azar was left with no other choice but to take another medical leave of absence. On the very same day his medical leave was granted, Raytheon summarily fired Mr. Azar with little explanation. Having been wrongfully terminated from his position, Mr. Azar now seeks to vindicate his rights under the Americans with Disabilities Act, 42 U.S.C. § 12101.[1]

## PARTIES

1.     Plaintiff Fardin Azar ("Mr. Azar" or "Plaintiff") is an individual who resides at 44 School St. Weston, MA, 02493. From 1996 to 2020, Mr. Azar was employed as a Mechanical Engineering Analyst by Raytheon Corporation in its Marlborough, Massachusetts office.

2.     Defendant RTX Corporation ("Raytheon" or "Defendant") is an aerospace and defense company incorporated in Delaware and headquartered in Arlington, Virginia. In 2020, Raytheon Corporation merged with United Technologies to form Raytheon Technologies

---

[1] This amended complaint was prepared with the assistance of Boston College Law School Pro Se Legal Assistance Clinic.

Corporation. In 2023, Raytheon Technologies Corporation rebranded as RTX Corporation. Raytheon maintains offices and conducts business in Massachusetts.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under a violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, a federal statute.

4. This Court has personal jurisdiction over Defendant because it has sufficient minimum contacts with this District, including that it maintains offices and conducts business in the Commonwealth of Massachusetts.

5. Venue is proper in the District of Massachusetts pursuant to 28 U.S.C. § 1391(b)(2) because all or a substantial part of the events or omissions giving rise to the claim occurred in this District.

## CONDITIONS PRECEDENT

6. On May 12, 2020, Plaintiff timely filed a charge of disability discrimination and retaliation with the Massachusetts Commission Against Discrimination ("MCAD"). On June 29, 2020, an MCAD investigator was assigned to Plaintiff's case.

7. On February 25, 2025, MCAD arrived at a final determination to discontinue further investigation into the charges.

8. On March 21, 2025, the Equal Employment Opportunity Commission ("EEOC") issued Plaintiff a Notice of Right to Sue. Plaintiff timely filed his Complaint [ECF 1] within 90 days of receipt of notice of his right to sue.

9. Therefore, Plaintiff has fully complied with all prerequisites to jurisdiction in this Court under the ADA.

## STATEMENT OF FACTS

**I.    For 24 years, Mr. Azar was an exemplary employee and was deemed one of Raytheon's most valued engineers by colleagues and supervisors alike.**

10.    Beginning in 1996, Mr. Azar was a loyal employee of Raytheon Technologies. As a Mechanical Engineer Analyst, Mr. Azar performed various simulations and calculations to test, analyze, and optimize mechanical designs, requiring high-level technical expertise.

11.    For over 20 years, Mr. Azar received glowing reviews from his managers at Raytheon, highlighting his skills, work ethic, and collaborative efforts. One such review stated that Mr. Azar was known by colleagues as the "go-to" analyst across different departments. Another stated that Mr. Azar was "a valuable member of the analysis section" and that "his efforts and talents are appreciated." Supervisors noted that the positive attributes they spoke of were "echoed by colleagues," who thought very highly of him.

12.    In particular, Mr. Azar has a knack for thermal testing, a skill which one reviewer noted was uniquely "valuable to the section and to his section manager."

13.    Beyond his work with Raytheon employees, Mr. Azar was also valued by customers, with reviews mentioning his "strong technical knowledge, efficiency in performing tasks, modeling skills, professionalism, hard work, and attention to detail."

14.    During his tenure at Raytheon, Mr. Azar was promoted five times, holding the esteemed title of Senior Principal Engineer at the time of termination.

**II.    Following a car accident sustained while traveling between Raytheon offices, Mr. Azar requests reasonable accommodations and is met with discrimination and harassment, rather than support.**

15.    In December 2016, while traveling between Raytheon facilities, Mr. Azar was in a serious car accident, where he was rear-ended by a driver traveling at high speed and, upon

information and belief, under the influence of alcohol. As a result of the injuries he sustained, Mr. Azar was placed on medical leave by the Raytheon Absence Management Registered Nurse from December 2016 to April 2017.

16.    During that same period, Mr. Azar lost his father, to whom he was tremendously close.

17.    As a result of these events, Mr. Azar was diagnosed with anxiety, major depressive disorder, hyperlipidemia, fatty liver, and positional vertigo/high-frequency sensorineural hearing loss/tinnitus. Mr. Azar was substantially limited in a number of major life activities, such as concentration, hearing, sleeping, emotional regulation, and other daily functions.

18.    When Mr. Azar returned to work, he was offered neither workers' compensation for injuries he sustained on the job nor reasonable accommodation for his disability. Instead, Mr. Azar was assigned even more work than before his leave of absence.

19.    From April 4 to April 6, Mr. Azar reported three separate times to the Raytheon Absence Management Registered Nurse that he was experiencing health issues. He asked to discuss reasonable accommodations, expressing a desire to change his work schedule or transfer to a vacant position with a more manageable workflow.

20.    Specifically, Mr. Azar requested to be reassigned to either the Production or Reliability Engineering sections, positions for which he possessed the requisite skill set. Raytheon employees were regularly transferred between departments upon request, even without having a disability requiring reasonable accommodation. Despite this, Mr. Azar's requests for accommodation were ignored.

21.    In July of 2017, Mr. Azar called the "RTX Speak Up Helpline," an ethics reporting hotline for reporting issues and concerns within Raytheon. Mr. Azar reported his concerns about his workflow stemming from his senior manager to the helpline. There was no follow-up on behalf of Raytheon following Mr. Azar's call.

22.    Mr. Azar's health issues continued to limit his ability to fully engage with his assigned tasks as a Mechanical Engineer Analyst. He regularly checked the list of vacancies at Raytheon for new openings, desperate to find less stressful work. Each time Mr. Azar requested reassignment, there were multiple vacant positions. Mr. Azar was often overqualified for these open positions, given his extensive technical background and experience, but told Raytheon that he was willing to take a demotion and loss of pay.

23.    Between mid-2018 and mid-2019, Mr. Azar made several requests to Karen Rapoza, Department Manager, to be assigned to a different section. Rapoza never responded to these requests.

24.    Following the department's lack of response, Mr. Azar attempted to pursue other avenues to obtain reasonable accommodations. Starting in or around mid-2019, Mr. Azar began asking Thresea Forte, Human Resources Representative, to assign him to a different section.

25.    Forte reached out to schedule a meeting, and Mr. Azar was looking forward to discussing his reasonable accommodations. They met several times, but Ms. Forte left Raytheon shortly thereafter and nothing ever came of those meetings.

26.    Despite Mr. Azar's pleas, the Defendant ignored him and turned up the pressure on him by mocking and isolating Mr. Azar.  For instance, Mr. Azar reported at the time that his section manager, Anurag Gupta, was giving Mr. Azar significantly more work than usual, despite his documented requests for a less stressful workload. Mr. Azar also mentioned that

Gupta had yelled at him in front of other employees and publicly undermined his work, despite possessing far less experience than Mr. Azar.

27.     Meanwhile, another supervisor, Mike Null, was overheard mocking Mr. Azar's disability to other employees, who began to openly question Mr. Azar about his ability to perform his tasks as a direct result of Gupta's exposure of Mr. Azar's confidential health information. Rick Kubitz, a trusted colleague in a different section, stopped consulting with Mr. Azar on a number of projects, as he had done regularly for the last 15 years.

**III.    After months of ignoring Mr. Azar's repeated requests for reasonable accommodation, Mr. Azar was terminated from Raytheon because of his disability.**

28.     In or around late 2019, Mr. Azar was placed on a Performance Improvement Plan ("PIP"). Upon information and belief, the PIP was intended to lay the foundation for Mr. Azar's termination because Raytheon did not want to provide reasonable accommodations for his disability.

29.     At no time during any of the four PIP meetings did the committee, consisting of Gupta, Rapoza, and Human Resources Representative Kate Green, inquire about Mr. Azar's disability and how it might be impacting his work, despite their knowledge of his diagnosis and requests for reasonable accommodations.

30.     As a last-ditch effort, in January of 2020, Mr. Azar made yet another request to Human Resources to be transferred to any of the open vacancies in other departments. His requests were, yet again, ignored.

31.     Because of Raytheon's repeated failures to grant Mr. Azar's requests for reasonable accommodations, Mr. Azar had no other choice but to file for another medical leave of absence.

32.    On April 10, 2020, the very same day his leave of absence was approved, Mr. Azar was terminated from his employment at Raytheon without explanation. Mr. Azar's termination was a direct result of his disability diagnosis and Raytheon's disinterest in providing him the reasonable accommodations he was entitled to by law.

## COUNT ONE

## Failure to Provide Reasonable Accommodations in Violation of the Americans with Disabilities Act

## 42 U.S.C § 12112(b)(5)(A)

33.     Plaintiff Fardin Azar incorporates each of the allegations above as if fully set forth herein.

34.     Plaintiff was a full-time employee of Raytheon, an "employer" as defined by 42 U.S.C. § 12111(4)-(5)(A).

35.     Following his diagnoses after his car accident in December of 2016, compounded by the loss of his parents, Plaintiff was a "qualified individual with a disability" within the meaning of 42 U.S.C. § 12111.

36.     Plaintiff's disability interfered with major life activities, including concentration, sleep, and emotional regulation.

37.     Plaintiff notified Defendant of his disability and requested reasonable accommodations: a modified work schedule or a transfer to any one of the various open positions across Raytheon's departments for which he was well-qualified—both explicitly identified as examples of reasonable accommodations under 42 U.S.C. § 12111(9)(B).

38.     Defendant refused to engage in the interactive process mandated by 42 U.S.C. § 12111(9)(B) and repeatedly ignored Plaintiff's requests for reasonable accommodation in violation of his rights.

39.     Plaintiff suffered damages as a result of Defendant's unlawful discriminatory conduct, including past and future loss of wages and benefits, emotional distress, and the costs of filing this action.

9

40.    By virtue of the foregoing conduct, Defendant violated Plaintiff's rights under the Americans with Disabilities Act, and did so with reckless indifference to Plaintiff's rights. Accordingly, Plaintiff is entitled to compensatory damages, consequential damages, punitive damages, the costs and expenses of this action, and any such relief as this Court finds to be appropriate.

## COUNT TWO

### Wrongful Termination in Violation of the Americans with Disabilities Act

### 42 U.S.C. § 12112(b)(5)(B)

41.    Plaintiff Fardin Azar incorporates each of the allegations above as if fully set forth herein.

42.    Plaintiff was a full-time employee of Raytheon, an "employer" as defined by 42 U.S.C. § 12111(5)(A).

43.    Plaintiff is a "qualified individual with a disability" within the meaning of 42 U.S.C. § 12111.

44.    Defendant became aware of Plaintiff's disability when it was reported to the Defendant through official channels and shared among Plaintiff's supervisors by the Absence Management Registered Nurse.

45.    Plaintiff made multiple requests for reasonable accommodation and attempted to participate in the interactive process mandated by the ADA by contacting HR representatives, and speaking to department managers.

46.    Rather than engaging with Plaintiff to address his reasonable request for accommodation, Defendants overworked Plaintiff and shamed him among colleagues.

47.    On April 10, 2020, Defendant unlawfully terminated Plaintiff's employment as a result of his disability.

48.    Plaintiff suffered damages as a result of Defendant's unlawful discriminatory conduct, including past and future loss of wages and benefits, emotional distress, and the costs of filing this action.

49.    By virtue of the foregoing conduct, Defendant violated Plaintiff's rights under the Americans with Disabilities Act, and did so with reckless indifference to Plaintiff's rights. Accordingly, Plaintiff is entitled to compensatory damages, consequential damages, punitive damages, the costs and expenses of this action, and any such relief as this Court finds to be appropriate.

## COUNT THREE

**Failure to Maintain Confidential Medical Records in Violation of the Americans with**

**Disabilities Act**

**42 U.S.C. § 12112(b)(3)(B)(i)**

50.  Plaintiff Fardin Azar incorporates each of the allegations above as if fully set forth herein.

51.  Plaintiff was a full-time employee of Raytheon, an "employer" as defined by 42 U.S.C. § 12111(5)(A).

52.  Plaintiff is a "qualified individual with a disability" within the meaning of 42 U.S.C. § 12111.

53.  Defendant became aware of Plaintiff's disability when it was reported to the Defendant through official channels and shared among Plaintiff's supervisors by the Absence Management Registered Nurse.

54.  Plaintiff's medical records, detailing his disability, ought to have been treated as confidential under the scope of 42 U.S.C. § 12112(b)(3)(B)(i).

55.  Plaintiff's supervisor was overheard sharing details of Plaintiff's disability with Plaintiff's co-workers, who were not in managerial or supervisory roles.

56.  As his diagnosis made its way around the office, Mr. Azar was subjected to harassment and discrimination by his colleagues, cultivating a hostile work environment.

57.  Plaintiff suffered damages as a result of Defendant's failure to maintain confidentiality surrounding his disability, including emotional distress and the costs of filing this action.

13

58.     By virtue of the foregoing conduct, Defendant violated Plaintiff's rights under the Americans with Disabilities Act, and did so with reckless indifference to Plaintiff's rights. Accordingly, Plaintiff is entitled to compensatory damages, consequential damages, punitive damages, the costs and expenses of this action, and any such relief as this Court finds to be appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Fardin Azar respectfully requests that this Court grant the following relief:

59.    Judgment in favor of Plaintiff on all counts;

60.    Past wages and benefits, plus interest;

61.    Reinstatement—specifically, in the Production or Reliability Engineering Section;

62.    In the alternative, front pay and benefits;

63.    Compensatory, punitive, and consequential damages as appropriate;

64.    All costs incurred as a result of this action; and

65.    Any additional relief that this Court deems just and proper.

## JURY DEMAND

WHEREFORE, Plaintiff demands trial by jury on all claims so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: October 16, 2025

Respectfully submitted,

FARDIN AZAR (*Pro Se* Plaintiff)

**/s/ Fardin Azar**

44 School St., Apt. C21

Weston, MA 02493

Telephone: (617)-858-4776

fardinazar@gmail.com

## CERTIFICATE OF SERVICE

I, Fardin Azar, *Pro Se*, hereby certify that I caused this document to be filed through the ECF system and that it will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF). Defendant has assented to electronic service since the beginning of this litigation.

Dated this 16th Day of October, 2025.

FARDIN AZAR (*Pro Se* Plaintiff)

**/s/ Fardin Azar**

44 School St., Apt. C21

Weston, MA 02493

Telephone: (617)-858-4776

fardinazar@gmail.com

17